Timothy M. MOSER, an
individual, Plaintiff,

v.

ENCORE CAPITAL GROUP,
INC., Defendant.

Case No. 04CV2085 JLS (WMc).

United States District Court,
S.D. California.

Dec. 20, 2012.

Anthony J. Dain, Frederick K. Taylor,
Robin L. Phillips, Procopio Cory Har-
greaves & Savitch LLP, San Diego, CA,
for Plaintiff.

Earll M. Pott, Coughlan, Semmer, Fitch & Pott, LLP, Michael A. Attanasio, Ryan E. Blair, Cooley Godward Kronish, San Diego, CA, Jason D. Kogan, Terry W. Bird, Thomas V. Reichert, Preston H. Lim, Bird, Marella, Boxer, Wolpert, Nessim, Drooks & Lincenberg, Los Angeles, CA, for Defendant.

## ORDER REGARDING STOCK OPTION VALUATION

JANIS L. SAMMARTINO, District Judge.

Presently before the Court are Defendant Encore Capital Group, Inc.'s ("Encore") Renewed Motion to Preclude Evidence Regarding Options Valuation, (Def.'s MiL, ECF No. 441), and Plaintiff Timothy W. Moser's ("Moser") Motion in Limine No. 1 to Preclude Evidence that the Default Date to Value Moser's Options is the Date of the Settlement Agreement, and in the Alternative, to Preclude Evidence of Prior Options Evaluations, (Pl.'s MiL, ECF No. 444). The parties contend that the Court must modify its prior ruling regarding the valuation of Moser's claim for employee stock options, which is the largest financial element in this breach of contract case. Having considered the parties' arguments and the law, the Court **DENIES** both motions.

## 1. The Parties' Arguments

Prior to the first jury trial, the Court ruled that the default date for valuing Moser's stock options must be June 21, 2002—the date that the parties entered into the Settlement Agreement. (Tr. of Status Hrg., June 4, 2012, 25–26, ECF No. 427). The Court also allowed Moser to argue an alternative valuation date to the jury by offering evidence to show that it was reasonably certain that he would have

exercised his stock options on some other date. (*Id.*) At trial, Moser testified that he would have exercised 17% of his options in September of 2003, and the remaining 83% of his options in January of 2005. (Declaration of Thomas V. Reichert in Support of Def.'s MiL, Ex. F, Trial Tr., June 20, 2012, 6–7, ECF No. 441).[1] Had Moser exercised the stock options on the dates to which he testified at trial, he would have earned approximately $6,000,000. (Def.'s MiL 1, ECF No. 441).

In anticipation of a second jury trial, both parties now seek to have the Court modify this initial ruling. Encore argues that the stock options must be valued on the date that the parties entered into the Settlement Agreement and that valuing them on any other date would be legal error. (Def.'s MiL 9, ECF No. 441). According to Encore, the only remedy that Moser is seeking in this case is restitutionary in nature, such that his remedy must put him back in the position that he was in immediately *before* he entered into the Settlement Agreement. (Def.'s Opp'n to Pl.'s MiL 1, ECF No. 456). On that date, Moser's stock options had little or no value. (*Id.*)

Moreover, Encore argues that, even if the Court holds to its initial ruling, Moser's evidence is insufficient as a matter of law to show that he would have exercised his options on a different date. (Def.'s MiL 1, ECF No. 441). Encore points to allegedly inconsistent damages calculations that Moser provided during discovery, in pretrial filings, and at trial. (*Id.* at 1–2). According to Encore, "Moser has offered ... numerous inconsistent and contradictory [accounts of] how many options he was entitled to and the dates on which they should be valued." (*Id.* at 2). Thus, Encore argues that, "[i]n light of the histo-

---

1. Pincites to exhibits use the page numbers assigned by CM/ECF.

ry of [Moser's] contradictory testimony, no reasonable jury could find it 'reasonably certain' that Moser would have exercised some or all of his options on a particular date." (*Id.* at 3).

Moser argues, on the contrary, that the stock options should be valued as of September 9, 2003, the date that Encore breached the Settlement Agreement, or on some subsequent date. (Pl.'s MiL 1, ECF No. 444). Moser invokes the rule that, in breach of contract cases, damages should be assessed "as of the date that the breach of contract occurred." (*Id.*) He also argues that the options can be valued at a date subsequent to the breach in order to avoid "effectively forc[ing] [him] to exercise his options" before he had planned to exercise them. (*Id.* at 2). Thus, Moser seeks to preclude Encore from offering any evidence that the default date for valuing the options is the date that the parties entered into the Settlement Agreement. (*Id.* at 1).

Moser argues in the alternative that, if the Court's original ruling holds, Encore should be prohibited from introducing any evidence at trial regarding his prior damages calculations. (*Id.* at 1). Moser argues that the prior damages calculations were "based on law which permits Moser's options to be valued on or after Encore breached the Settlement Agreement" and that "he should not be made to look dishonest at trial for having previously sought to recover the full amount of his damages ...." (*Id.*) In short, Moser seeks to prevent Encore from impeaching him at trial with his prior statements regarding how much his options are worth.

### 2. Valuing Moser's Stock Options

In breach of contract cases, valuing stock options on the date of the breach is typically preferable to utilizing a valuation date that is based solely on a plaintiff's speculation as to when he "would have" exercised his options. *Scully v. U.S. WATS, Inc.,* 238 F.3d 497, 509 (3d Cir. 2001).[2] Although this valuation rule is far from perfect, it reflects a difficult choice between two inevitably flawed alternatives. On the one hand, if a plaintiff is limited to recovering the value of the option at the time of the breach, the damages calculation may fail to provide the plaintiff with "a relevant benefit of his bargain, namely the prospect of future profits which provide the fundamental underpinning of stock options." *Id.* at 510. On the other hand, if a plaintiff is permitted to select any point during the period between the breach and the end of the litigation to value his options, he not only injects uncertainty and speculation into the damages calculation, he also gets "the benefit of hindsight, thereby putting him in a better position than if the breach ... had never occurred." *Id.* at 509. In the majority of cases, the possibility of short-changing the plaintiff is outweighed by the great uncertainty of using a later valuation date.

A valuation date subsequent to the breach may nonetheless be appropriate in certain limited circumstances where "adequate evidence confirm[s] a plaintiff's professed intent concerning the exercise" of his stock options. *Id.* at 513 n. 3. "[A] district court's express credibility finding

---

**2.** In *First National Mortgage Co. v. Federal Realty Investment Trust,* the Ninth Circuit cited *Scully v. U.S. WATS, Inc.* favorably for the proposition that options should be valued as of the date of the breach, rather than at some speculative point in the future. 631 F.3d 1058, 1070 (9th Cir.2011) (holding that the

district court "properly valued the option as of the date of the breach.... [T]he mere fact that [Plaintiff] would have *exercised* its option at some particular time in the future does not mean that it gets to receive the *value* as of that date.").

or other convincing evidence ... [may lead the court to] accept a plaintiff's after-the-fact assertion that he would have sold stock at a [particular] time." *Id.* at 513. In other words, if a plaintiff presents credible, convincing evidence that he would have exercised his options on a specific date, then a court may use that date as the valuation date. For example, in *Greene v. Safeway Stores, Inc.*, the plaintiff-employee was wrongfully terminated and forced to exercise his stock options almost immediately. 210 F.3d 1237, 1243 (10th Cir. 2000). In valuing those options, the court accepted the plaintiff's assertion that, had he not been terminated, he would have exercised the stock options over two years later, at a particularly advantageous time, because his alleged intent was confirmed by his planned retirement date. *Id.*

█ There are some unique challenges in applying this breach-of-contract framework to the facts of this case. Here, Moser is not filing suit over Encore's breach of an employment agreement, or stock option agreement, but rather over Encore's breach of the Settlement Agreement. Moser is not seeking actual damages for Encore's breach, such as compensation for physical or financial harm; rather, he is arguing that the Settlement Agreement included a conditional release and, consequently, that he is now entitled to the value of the claims that he gave up when he entered into the agreement. Thus, as Encore suggests, the remedies here must be "backward-looking," with the aim of putting Moser in the position that he was in prior to entering into the Settlement Agreement. (Def.'s Opp'n to Pl.'s MiL 1, ECF No. 456).

In light of the remedy that Moser is seeking here, the critical date for calculating damages must be June 21, 2002, the date that the parties entered into the Settlement Agreement. Moser errs in arguing that the stock options should be valued on, or after, September 9, 2003, the date that Encore allegedly *breached* the agreement. (Pl.'s MiL 1, ECF No. 444). The only cognizable damages that Moser is seeking in this matter derive from the reinstatement of the value that he allegedly conditionally released, not from compensation for Encore's alleged breach.

Yet it is also clear that Moser did not attempt to exercise his stock options during his employment with Encore, or at any point prior to entering into the Settlement Agreement. (Pl.'s MiL 5, ECF No. 444). As Moser has indicated, he was waiting to exercise his options, in part because he expected them to appreciate over time. (*Id.* at 3). Because Moser's employment was terminated, and the Settlement Agreement finalized, before he could profit from an increase in the value of his stock options, valuing the options as of the date of the Settlement Agreement may deprive Moser of the full value of his alleged employment agreement. *See, e.g., Greene,* 210 F.3d at 1243–44.

Although the parties have made clear that Moser's alleged employment agreement is not the focus of this suit, Moser should nonetheless be permitted to prove the value of the remedy that he is seeking. Moser's position throughout the course of this litigation has been that he conditionally released his claims against Encore in the Settlement Agreement and that, as a consequence of Encore's breach of that agreement, he is entitled to the full value of the salary, benefits, and stock options provided for in the "General Counsel Package." The Ninth Circuit reversed this Court's grant of summary judgment so that Moser could pursue this measure of damages. *See Moser v. Encore Capital Group, Inc.,* 455 Fed.Appx. 745, 747 (9th Cir.2011) ("The proper measure of dam-

ages is closely tied to whether the release was conditional.").

"Given the myriad factors that might arise in each case, [it is doubtful] that any single universal damage theory could properly value stock options in all situations." *Scully*, 238 F.3d at 512. The Court's task is therefore to draw from general principles of contract law to fashion a valuation rule that fits the specific circumstances of this case. Although the breach-of-contract framework does not apply neatly to our facts, the most appropriate resolution here is to value the options on the date that Moser entered into the Settlement Agreement, unless Moser can prove that he would have exercised his options on another date, in which case the options may be valued as of that date. The Court therefore declines to modify its original ruling on this issue.

### 3. Sufficiency of Moser's Evidence As To When He Would Have Exercised His Stock Options

Encore and Moser also dispute whether Moser's evidence regarding his intent to exercise his stock options is sufficient, as a matter of law, under the standard the Court has adopted. (Def.'s MiL 1, ECF No. 441; Pl.'s Opp'n to Def.'s MiL 1, ECF No. 468). Encore argues that Moser's contradictory statements over the course of this litigation make it impossible for any reasonable jury to conclude that it is reasonably certain that he would have exercised his stock options on any particular date. (Def.'s MiL 3, ECF No. 441).

▪ Valuing Moser's options on a date subsequent to the date of the Settlement Agreement is permissible only if "adequate evidence" confirms Moser's stated intent to exercise his options at a particular time. *See Scully*, 238 F.3d at 513 n. 3. Adequate evidence, in this context, refers to evidence that indicates that Moser's intent to sell on a particular date was formulated before he had the benefit of hindsight. *See id.* Thus, Moser must show that he had already resolved to sell his options on a particular date before he entered into the Settlement Agreement. *See id.*

▪ Here, Moser intends to provide testimony at trial regarding a strategy that he formulated during his employment with Encore, according to which he would have closely tracked the investment decisions of famed investor Nelson Peltz ("Peltz") and other executives and insiders at Encore's parent company Triarc Companies ("Triarc"). (Pl.'s Opp'n to Def.'s MiL 2, ECF No. 468). Moser will testify that, based on conversations with insiders at Triarc as well as his own knowledge of Encore's operations, he determined early on during his tenure at Encore that he would exercise his stock options at the same time that Triarc's officers sold their shares. (*Id.*) The dates that Moser has previously testified to as proper dates for valuing his shares, in September 2003 and January 2005, coincide with sales of Encore stock by Triarc's executives. (*Id.* at 3).

Encore argues that Moser's evidence is legally insufficient because it is inconsistent with positions he has taken at various stages in this litigation regarding the value of his stock options. (Def.'s MiL 1, ECF No. 441) ("Plaintiff's trial testimony about [his] options was at wild odds with the various pre-trial positions he has taken.") According to Encore, Moser's Proposed Pretrial Conference Order, his various responses to interrogatories, his Rule 26 disclosures, and the testimony from his retained experts each set forth a different date for valuing the options. (Def.'s MiL 1, 4–5, ECF No. 441). Moreover, at no point prior to trial did Moser disclose his alleged strategy of following Triarc's investment decisions. (*Id.* at 1–2).

The Court agrees with Encore that "there are a number of factors which call the credibility of [Plaintiff's] testimony into doubt." *LeBlanc v. Nortel Networks Corp.,* No. Civ.A. 3:03–CV–65, 2006 WL 839180 at *10 (M.D.Ga. Mar. 30, 2006). Nonetheless, Moser's credibility is an issue for the jury to consider. Though Moser's testimony may seem unbelievable to Encore, he is allowed to present evidence of a plan for exercising his options that he allegedly developed well before the date of the Settlement Agreement. In doing so, Moser is not simply picking an advantageous date with the benefit of hindsight; rather, he is claiming that he intended all along to exercise his stock options on the days when Peltz and other Triarc insiders sold their shares. It is ultimately for "the jury to determine whether [his] testimony" regarding his pre-breach plan to exercise his options on a particular date "is credible or is merely self-serving hindsight." *Id.*

It is true, however, that Moser's testimony regarding his intent must be confirmed by objective factors indicating that it would be "sensible" for him to exercise his options at that time. *See LeBlanc,* 2006 WL 839180 at *10 ("[T]he date on which the sale of stock or exercise of options was allegedly intended coincided with a significant event that had nothing to do with the price of the stock. Plaintiffs' affidavit testimony about their intent to sell as soon as the exchange was completed is supported by sensible reasons for selling stock at that time [such as diversifying investments]."). Here, although Moser may have little or no evidence to offer besides his own testimony regarding his alleged plan, his testimony makes reference to objective factors that confirm his intent to exercise his options in September of 2003 and January of 2005. *See Greene,* 210 F.3d at 1246. It would no doubt have been sensible for Moser to participate in Triarc's stock sales on those dates in light of the investment experience and expertise of Triarc's officers and directors, including Moser's guru, Peltz. Triarc's sales of Encore shares were significant, anticipated events, independent of the price of the stock, that support Moser's testimony that he would have exercised his options on the proposed dates. *See id.* at 1243–44; *LeBlanc,* 2006 WL 839180 at *10.

Finally, precisely because Moser's allegedly inconsistent statements regarding the value of his stock options may undermine the credibility of his testimony, the Court must reject Moser's effort to keep this information from the jury. The fact that Moser has taken seemingly inconsistent positions regarding the value of his options is highly relevant to the issue of whether he did in fact intend to exercise his options on the dates that he proposes.

### CONCLUSION

For the reasons stated above, the Court will not modify its original ruling regarding the correct date for valuing Moser's stock options. Accordingly, the Court **DENIES** both parties' motions.

**IT IS SO ORDERED.**